Let's call the case. It's 17-1192 Kerr v. Polis. Ms. Mercer, you may begin. Good morning and may it please the Court. I'm Sarah Mercer, Counsel for the Plaintiff's Appellant. There are three ways through the Branson-Hugo ticket. None requires the Court to abrogate or diverge from the circuit's current case law, and each results in the case being returned to the District Court. First, the Court could determine that the Article III jurisdictional threshold has been met and direct the District Court to decide the substantive question of political subdivision standing at the merit stage. Hugo acknowledges there is serious reason to doubt whether political subdivision standing is a jurisdictional limitation in its own right. The plaintiffs here were found to have Article III standing by both the District Court and the panel's majority, and the Governor does not challenge this point. Second, the Court could hold that political subdivision standing falls squarely within Branson v. Hugo in this case, because the Colorado Enabling Act is a sufficient federal statute, and its requirement of a Republican form of government is a sufficient collective and structural right. Hugo states that under Branson, standing is properly granted to a political subdivision that seeks to, quote, enforce against its parent state through the Supremacy Clause rights accorded to it by the Colorado Enabling Act. In Hugo, the Colorado Enabling Act was used as an example of a statute under which a political subdivision's claims could proceed. In fact, in Branson, the Colorado Enabling Act was the very statute under which the political subdivision was found to have standing. This is the exact posture of the plaintiffs here, who are seeking to enforce the Colorado Enabling Act's requirement of a Republican form of government against the state through the Supremacy Clause. As to the right being asserted, the requirement of a Republican form of government is not an individual right, but rather a collective and structural one, because it is the right to be governed by representative institutions that are given separate and specific powers to ensure the common welfare. This fully satisfies both Branson v. Hugo and all the elements of political subdivision standing. Third and last, the Court could hold that political subdivision standing is intertwined with the merits of the case and must be decided by the District Court at a later stage. The Governor reached Hugo selectively to require that the rights being asserted must not only be collected and structural and arise from the federal statute, but also be directed at protecting the political subdivision. Before we can determine who is protected by a Republican form of government, we must first, during the merit stage, define what a Republican form of government is. This case is nothing if not an originalist case concerning what James Madison meant in Federalist Number 10. No matter the route the Court takes here, jurisdictional threshold met, political subdivision standing met, or political subdivision standing intertwined with the merits of the case, the case should be returned to the District Court. I'm now happy to answer any of your questions. Thank you, Counsel. Judge Holmes? Yes. Let me just clarify first, starting out. I wasn't clear. What is the distinction between your first line of reasoning and your third? What is it that would be contemplated by the first line of reasoning that you spoke of? If the Court were to determine that Article III jurisdictional threshold had been met, well, the Court has determined that Article III jurisdictional standing has been met. Because of Lexmark, it really calls into question whether or not any elements of prudential standing are properly raised at the jurisdictional phase. Really, the first route that the Court could take would be to determine that Article III standing is sufficient and that the substantive question of whether or not political subdivision standing is met here could be moved to a later phase. Under the third route, this is really an extension of the political subdivision standing as a jurisdictional threshold. So, if the Court in the second route were to determine that Branson and Hugo have been met, then the Court could determine now that political subdivision standing has been met and return the case to the District Court. However, if it were to decide that Hugo requires the showing of a right that is directed at protecting the political subdivision, we submit that that is a question that requires the Court to look at the merits and to return that to the District Court in order to make that determination at that stage. Okay, so under the first view, we've already, I mean, it's not disputed that you have Article III standing, at least that's not an issue here. So, under the first view, we would do what? I mean, what would be the resolution that, what would that look like? Well, under, the question really is, is political subdivision standing a jurisdictional threshold question? And under... I thought you had taken the position in your brief that it wasn't a jurisdictional standing threshold question, that it was a question that related to, that it wasn't an Article III jurisdictional question, that it was a question related to what party could bring the action, right? I thought you agreed with the Governor. Yes, thank you, Your Honor. The supplemental, the order on supplemental briefings asks if political subdivision standing is a jurisdictional question, and you're correct. We believe, and the Governor also admits, that political subdivision, that political subdivision standing is not a threshold jurisdictional question, but that it is better seen as a substantive limitation on who could bring a cause of action. So, the first route would, this court could make an actual, it could make a determination and clarify that, that political subdivision standing is not a jurisdictional question, but rather is a question to be decided later around, you know, from a substantive perspective. The Route 3 would still hold the question of, would still hold the question of political subdivision under the jurisdictional sort of rubric, if you will. Okay, under Route 3 though, however, did you ever raise Route 3 prior to it appearing in the majority opinion? I don't recall you ever arguing that before, that somehow or other it was so intertwined with the merits that we had to delay it and reach it later. Yes, Your Honor, we have argued that in our, in briefing throughout the, you know, throughout the case. That is something we have raised before. That we could not decide whether you had jurisdiction before we decided what a Republican form of government is? We had, under Route 3, we have previously argued that the, that the merits that the issue of political subdivision standing would be intertwined with the merits of the case, and that that is a decision from a jurisdictional perspective that could be argued later, and that is under largest. That's the case that we cited too in our brief. The First Circuit case, which is not one of our cases, right? That's correct. Okay, now under your view of the case, then, is 12b1 an appropriate vehicle with which to pursue this action? Your Honor, the Governor even concedes that the 12b1 motion for failure for subject matter jurisdiction is probably not the proper motion at this, at this stage and to raise this claim. That rather, the proper claim that the Governor would like for them to be converted to is to a Rule 12b6 motion for failure to state a claim, and we would argue that that is, that that is also true if the Court were to take the Route 1, but the Court doesn't need to do that. The Court has these three options and can find, we can find our way back to the District Court under either of the three options. Okay, well then you do accept the premise that if, if, if political subdivision standing is not jurisdictional in the conventional sense, either Article 3 or otherwise, then this is a 12b6 matter, essential. Yes, although converting the motion to a 12b6 is, is much more complicated than simply relabeling it as the Governor would like to do. Well, you put that in your brief and I'm not, yeah, please clarify why, why do you believe that's so? Last question, Judge. Okay, I'm sorry, sure. Thank you, Your Honor. Because Rule 12b1, under Rule 12b1, it's the plaintiff's burden to establish that jurisdiction is proper and the presumption is against defining the jurisdiction. If the motion were to be converted to 12b6, it's not that it can't happen at this stage, but the standard of review is much different. It, and what is being looked at is much different. Rule 12b6 requires an examination of the sufficiency of this complaint and presumes that all the facts said are true and construed in light of most favorable to the plaintiff. Up to now, the Governor has not presented an argument pointing to the failures of the plaintiff's factual pleading, but instead has argued about how those facts are interpreted. All right, thank, thank you, Judge Briscoe. Five minutes. Thank you. Counsel, following up, could we, do you think it's proper for us to convert this at this point from a 12b1 to a 12b6? Well, that's really within the, the court, to decide that. But, you know, under, whether the court, if the court were to leave this motion as a 12b1, the, then the panel's majority would need to be upheld because the Governor's motion would be denied because the, this is not a jurisdictional matter. If the court were to convert this motion to a 12b6, then the court needs to apply the 12b6 standard of review. And should be denied as well. So either way... Because the district court's never looked at this as a 12b6. All we have is the face of the complaint. Is that correct? Yes, that's exactly right. And notably, both Branson and Hugo were decided on motions for summary judgment after the parties had an opportunity to explore and develop their relevant facts of the case. Are your plaintiffs the proper parties to bring this, this case? Yes, absolutely, Your Honor. The plaintiffs... Isn't the General Assembly the proper party? Well, there are more, there are more than one. The General Assembly certainly would be a proper party to bring this case. And as the court knows, the General Assembly is waiting in the wings to join the case when it is returned to the district court. But they're not the only party who can bring the case. These political, the political subdivisions here, the plaintiffs here, or before this court now, are also proper parties for the reasons that we've outlined in our briefs and forth. Is that a jurisdictional question or a merits question? Proper party? The proper party, well, the plaintiffs in the case have been deemed to be a proper party under Article 3, which is the jurisdictional question. Whether the plaintiffs are a proper party under political subdivision standing, this sort of additional test, we submit that they are and requirements of both Hugo and Branson as is, without needing to go back to the court to develop additional facts. Well, there's two tests that are voiced in City of Hugo. Which do you think you would satisfy here? Well, Hugo states that the Colorado Enabling Act is a proper statute under which a political subdivision could bring a claim. And so that is the, you know, that's what, you know, we would look to Hugo to that. In Hugo, however, the plaintiff there didn't bring a statutory claim at all. The plaintiff in Hugo brought a constitutional claim under the Dormant Commerce Law. So the application of a test that would require that there be a showing that the statute directly benefits the political subdivision as a result of the analysis in Hugo is really not appropriate. Hugo really provides... Are you saying those standards in Hugo are dicta? Well, I think in Hugo, Hugo really provides the window for a statutory claim back into Branson to determine whether or not a claim brought by a political subdivision under a statute is proper. But in the City of Hugo, we were talking about a dormant cause case, not a statutory claim. That's exactly right. And that's why the meat of the analysis in Hugo does not apply directly to a statutory claim that we have here. If we would start over again, what standard would you apply? We would apply the standard that there needs to be a federal statute and that the federal statute must have, must have a, be for a collective and structural one. That would be, that's the standard that's created by Hugo. Would you go with directed at protecting a statute that's directed at protecting the plaintiff's rights? No. Hugo does not, Hugo does not directly require that of a statutory claim that is brought. Well, it's one of the two options that it sent out, was it not? Yes, that's true. That's true. And if the court were to determine that there needs to be a showing that the political subdivisions plaintiff here are directly protected by the Colorado Enabling Act requirement for a Republican form of government, that would be a question for the mayor because before we can know who is protected, we must know what the Republican form of government means. Do we need to determine whether or not the Enabling Act was specifically providing rights to these plaintiffs? That's the other standard in Hugo. Yes, Your Honor. If the plaintiffs are, if it's determined that the, that Hugo requires a showing that the Republican form of government is directly protect the plaintiffs in this case, then we would need to demonstrate that they're, that the Republican form of government was the political subdivision. But do the political subdivisions themselves need to show up in directly in the text of the Enabling Act? No, I don't think so. The, I would disagree with the governor's, we would disagree with the governor's requirement that or construing of the Enabling Act as being for the benefit solely for the people. The language of the Enabling Act is not quite as dry. The section in section five, the language in section five, where the for the people shows up, is it states, you know, it's in the section that sets out the parameters for when a pop, when the popular vote is to go before the people. What standard did we apply in Caw Tribe? Which of the Hugo standards did we apply in Caw Tribe? In Caw Tribe, thank you, Your Honor. In Caw Tribe, it was the statute was looked at to determine whether or not, you know, the, whether or not it looked to determine whether or not the statute was, whether or not the plaintiff fell under that statute. So. Broadly read, agreed parties, right? Correct. Broadly read, um, however, just following up on the route three, as Judge Holmes called it, as I understand your position, the prudential standing issue here is not jurisdictional. If that's true, isn't it also true that our cases say that we should not and cannot defer ruling on the statutory interpretation question, that it's not a question that's intertwined with the merits? And so isn't it proper to whether it's 12B1 or 12B6 to decide now before it goes any further? Your Honor, whether or not ruling that the, um, that the merits, that the question of political subdivision is intertwined with the merits would be a proper ruling by the court. The, of course, the court, um, when it can, should decide questions of, uh, whether a case is proper. However, um, uh, more facts would need to be developed here because there has not yet been a case to construe what a Republican form of government means. And so additional facts in this very unique case would need to be developed. So you're saying that additional facts need to be developed that would, um, establish, um, your entitlement to some judicially enforced remedy. And how are, how are we framing this, whether it's, um, you know, jurisdictional or zone of interest or Article III standing? Um, don't you have to plausibly allege some type of, um, injury to your client's interests? Yes. And we have alleged, certainly we have alleged injury sufficient to demonstrate injury and facts under... Well, what, what, what, what is a Republican form of government? Well, you know, Federalist number 10 is really, as I, as I mentioned in my opening, is widely regarded as the most important of the Federalist papers. And Madison's view was that the delegation of government, uh, would refine and enlarge the public voice. And that it was critical, uh, for there to be, um, uh, this delegation of power and that the legislative authority necessarily predominates that. Um, this, you know, what that means is certainly a question of, you know, both law and facts that we would need to develop, you know, during the, um, merit phase. Uh, and... Well, it sounds to me like mostly a, a legal question. And, um, I love Federalist number 10 also, um, although it doesn't bear directly on the guarantee clause. Um, but it, but if, if you take Madison seriously, and I, there's some scholars out there, um, that take this approach, um, under that interpretation, um, direct democracy or government policy by plebiscite, like is permitted under the Colorado initiative and referendum system would be flatly unconstitutional. And, um, I don't think you're challenging direct democracy as a concept, you know, the, the initiative process in Colorado, are you? No, this case is not an attack on the right to the citizen initiative. It really is a question of where the boundary lines are. Well, the government or the Supreme Court in a lot of cases, um, you know, the old, old one would be Luther versus Borden. The medium one would be Pacific Telephone in the early 1900s. And the more recent one would be Rucho. Um, the Supreme Court has uniformly said that these types of Republican form of government challenges, um, are not judicial, justiciable by the federal courts. How do we get around those cases? Well, certainly, uh, Rucho's one sentence reference to the guarantee clause was a passing one. And really what the case law has, has shown us is that they're just, the Supreme Court has not yet been presented with a justiciable claim under the guarantee clause. The Seventh Circuit has already rejected, uh, Rucho as, as standing for a broad reading, uh, that, you know, that would say that all guarantee clause claims are, are barred. Um, and, you know, I think, you know, it certainly, and importantly with respect to justiciability, the very first, first decision of this case, um, there was an analysis by the district court of the political question doctrine and the determination that it's not, it was not appropriate to submit the case on those grounds at this time. And that was affirmed by this court. All right. Last question, then I'll, I'll pass. Um, and really coming back to my previous question, what is a Republican form of government? And to be more specific, if you're not attacking direct democracy as a whole, what is it about tax policy, um, that cannot be, um, modified or restructured by, um, the people of the state? Well, the, you know, factually, when this, if this case were returned to the district court, we would need to show, and we would show that the Republican form of government, that it's one thing that's critical is to protect the prerogatives of the state legislature to tax and spend. This is connected to, uh, Federalist number 31, uh, Hamilton's, um, exposition on that, that the critical list of that core power, uh, and connecting that to Federalist number 10, and as well as Federalist number 51. Um, and then we would also need to show that the plaintiffs are unable to carry out their responsibilities as political subdivisions due to this rubber stamping requirement that Cable relegates. Um, you know, a Republican form of government benefits, not only the people, but all of the subordinate levels of government. Um, it, uh, of course, it, you know, requires delegates, uh, to the state legislature, but it necessarily extends to each lower level of government to ensure that the requirement of Republican form of government isn't abated. And also, um, the plaintiffs in this case certainly have the same rights that the people do, uh, to have a legislature with intact core powers to tax and spend. Um, and that's because all whether or not, you know, of how, uh, the powers could be, you know, curtailed, um, you know, that really is one, uh, for to answer at the district court. All right. Council. Thank you. Appreciate it. Um, uh, Mr. Heron, would you turn off the, uh, turn off the countdown clock, please? Um, I'll keep track of the time. All right. Let's turn to judge hearts. You have three minutes. Okay. It's Mercer. I'm I'd like to address some pragmatic issues because I think that's what this turns on. Ultimately. Um, there are times when preliminary matters, uh, have some overlap with the merits issues, but they can still be determined by the court without getting, without resolving the merits. That's the most recent case probably was by the Supreme court was in the class action context where the issue of whether the class should be certified involves some attention to the merits issues, but the court said you can go ahead and decide that anyway. So here, what we need to decide is whether the Republican form of as well as individuals. And why can't we at least consider whether that can be decided on the basis of what we have before us already? Why do we have to resolve the merits? Why do we need to send it back to the district court for further factual development? If it's subdivisions of government or it is not. Thank you, your honor. The, there has not been any court decisions that has informed, uh, what the definition of Republican form of government means in the country's 233 year history. And so there's no case law to look at to make this determination, nor have the parties reached that issue up to this point. And so to, to make that determination, uh, would require additional, would require as additional development and, um, into a further phase of the proceedings, whether that is, um, you know, discovery and factual evidence, whether that is, um, you know, motion for summary judgment, you know, with briefings of the facts and the law up to that point, we just, the case and the record is insufficient at this point to make that. You're saying that the law, the there's, there's no settled law on what it, what the Republican form of government is, but the issue that we're talking about here, isn't the, the, uh, uh, scope of that, but just who it's intended to protect, whom it's intended to protect. And can't we decide that without figuring out all the contours of the Republican form of government? Yes. If the court wanted to take that route, it could look to our complaints and under a rule B, a rule 12 B six motion, uh, you know, uh, construing all the facts in the plaintiff's that the Republican form of government is intended to protect the political subdivision plaintiff. And so, you know, it really does turn back onto what is the standard that the court is looking at here? Do you think that turns on the facts of the particular case? Normally when we ask whether a statute is intended to protect some group, we, we perform a legislative evaluation. We, interpret the statute. We don't look at the facts of the specific case. Couldn't we do that here? Last question. Thank you, your honor. Uh, if, if we were to, if the court were to desire to look at that issue, um, the, you know, what the court would need to look at is it would need to look into the federalist papers and to interpret federalist number 10, federalist number 50, federalist number 31 to make that determination. And again, we have the, the, the record in this case is there as to, uh, as to briefing on that particular issue. All right. Uh, thank you. Judge Hart says back rack. You're next. You're on mute. Thank you, chief. Uh, just a few questions. One is to follow up on judge and hearts is question, uh, in judge Seymour's panel opinion, where she discusses the fact that the, in her view, uh, in the, in the majorities that the, uh, jurist jurisdictional issue is intertwined with the merits and that that can only be decided with regard to the merits. I'm not sure to follow up on judge hearts is question. I understand why that is still pertinent. Now we have, uh, uh, opposing council has conceded that this should be treated under Morrison as a deferment on alternative ground under 12 B six. And presumably now both parties agree that we should simply look at the fourth amendment complaint and see if there are allegations that plausibly would, uh, allege facts that would satisfy the Hugo standard, whatever the Hugo standard is. Do you agree? Well, your honor, that's certainly one route. Uh, you know, there are two other alternative routes that the court could take with respect to, uh, determining that this is not a jurisdictional, but with respect to determining that, uh, Branson, uh, and Hugo do not require, uh, the court to look at whether or not the statute is directly protect the plaintiffs in this case, but taking that third route and that third approach. Um, yes, that would be, you know, the court would need to look at the, at the complaint in the light, most favorable to the plaintiff. And, you know, as I stated before the Republican form of government benefits, not only the people, but also every subordinate level of government. And that is true and is demonstrated both through the NA the language of the enabling act itself, but also through the federalist papers too. And sorry. Oh, thank you. And, and, you know, taken together with the, with the facts that are alleged in the complaint that gets the plaintiff through to, uh, to satisfy a rule 12 B six and through to the next phase. Okay. Putting aside, uh, Jason Anderson, the federalist papers judge more went through fairly meticulously. I think the allegations in the fourth amendment complaint to determine whether or not those allegations satisfied the city of Hugo a test. Um, he found none in the fourth amendment complaint. What in your view was, uh, did judge more overlook what allegations, if I were to flip to the fourth amendment complaint would plausibly allege that the, at least the enabling act or the political subdivisions? Well, if you look at the fourth amendment complaint, for example, and by way of example, because I think the, you know, the, the facts that go to this are throughout the complaint, but certainly paragraph 24, which alleges that caber removed, uh, from the state legislature and the subordinate political subdivisions, the power to tax and raise revenue that it severely curtailed their respective powers. If you look at paragraph 29, okay, before you go to 29, because this may help me understand your argument about 29 as well, 24, uh, says of what regards to the caber and then that did remove these powers. I don't understand how 24 or frankly, 29 or any, or 30 or 34, any of these allegations are framed, not in terms of the caber amendment. I don't think that's the problem in judge board view. I think his problem is that the enabling act doesn't, there was nothing about the, uh, in the fourth amendment complaint about the, uh, the, the content of the enabling act being designed to protect political subdivisions. What in 24 or 29, uh, involve allegations, uh, that the enabling act was designed to protect, uh, uh, political subdivisions. The, the enabling it's because the enabling act requires a Republican form of government and because caber stripped the Republican form of government away, that's the connection there. And so the, the Republican form of government, uh, as, as I stated benefits, not only the people, but it benefits the entire structure of government of which the political subdivisions are a part. And that is really for the common welfare. That's where the issue of the who and what become intertwined and require a more full development of actually what Republican form of government means before there's an opportunity and an ability to look into the enabling act to, to determine definitively who it is protecting. All right. Thank you, judge Phillips. You're next. Thank you, chief. Good morning council. Uh, Mike, I want to steer you back into the notion, uh, point of your emphasis and perhaps my uncertainty, which is the notion of individual versus collective or structural rights. And the sheet of music that I'm reading off of right now is Hugo itself. And there the court and reviewing Branson and caught tribe uses the word structural for what the court is doing with the supremacy clause, simply saying federal law is supreme. And then it has this pretty humble statement. I think as far as collective rights, this understanding of the supremacy clause informs the use of the word structural and collective to describe the rights, political subdivisions may vindicate in federal court against their parents' states, which ties directly into what the court says in double digits time that the federal statute has to be directed at providing rights to the political subdivision. And so I guess my first question is what good does all of this, uh, structural or collective do if it doesn't beat the notion that the enabling act has to be directed at protecting the subdivisions? Well, thank you. Thank you, your honor. You know, this really takes us, I think to Clinton versus the city of New York. Um, you know, there, uh, which was also a constitutional claim, the plaintiff brought suit under the presentment clause after they had lost funding when the, when the president, um, use the line item veto and there, the Supreme court did not require the plaintiff, including the political subdivision plaintiff, the city of New York to show that they were the beneficiary of that constitutional, uh, claim. Um, the court did not conduct an analysis of political subdivision standing at all. And so with respect to, you know, Hugo's requirement with respect to whether she will actually requires that there, uh, that the political subdivision be a direct beneficiary of the statute, uh, or of the, of the constitutional claim, you know, Clinton really does seem to call that into question. And I don't think that it is, it can be taken, um, as is, uh, you know, that said, uh, you know, again, going back to the, that the merits are, you know, that the, this question is really inextricably entwined with the merits of this case. Um, it just is, is not possible in this particular case to determine whether or not the political subdivision are beneficiaries of the enabling act without knowing what Republicans. If I have time for one more, I have a short one, which is, uh, in your supplemental brief, you make the point that the rights of the political subdivisions here preceded statehood and go back to territorial days for counties and the political subdivision. Isn't that true with every territory? And so what is the point that you're making there that I'm not sure I follow it? Yeah. The connection really is about the historical context. You know, I think in particular with respect to our school district plaintiffs, um, who have always enjoyed, you know, a specific, um, you know, kind of an interdependent relationship with the state that there is, uh, in the enabling act requirement of Republican form of government, it is establishing not a hierarchical structure, but rather an interdependence of which the political subdivisions are a part of because they were in existence in advance of statehood. It really goes specifically to the Republican form of government questions. Thank you. All right. Let's move next to the queue. Thank you. Um, my question is I'm a little perplexed about the argument that we need to send it back for discovery, assuming for a moment that, that we agree that this is a 12 v six issue, not a 12 v one issue. It appears to be a pure question of law. And, um, even if we say they're intertwined and we need to decide what a Republican form of government means before we can decide who's in the zone of interest of it, it seems to me we're not in a position where you can call into a deposition subpoena Madison and say, Hey, what did you mean? Or that there's some discovery that you could do that could unearth facts we don't already have. It seems to me what we have is a briefing issue so that if for some reason there hasn't been adequate briefing on this question, why isn't it just as easy for us to ask for supplemental briefing as it is to kick it back to the district court and have briefing on this pure question of law that we sort of need to sort out before we can decide a jurisdictional question. Thank you, Your Honor. The factual discovery would be to take that position and develop facts from the experts of constitutional history to determine the context, to determine the history around the federalist papers. Um, so not just discovery in, in, in, in sort of the traditional sense of, um, you know, seeking facts and interrogatories from the other side. It really would be to further develop and to apply the history around the federalist papers. Well, what's different than an expert deposition in an amicus brief? I mean, I'm, I'm still kind of perplexed why this needs to be sent back for further discovery. Well, um, you know, I think, uh, uh, a deposition of an expert certainly is different than, uh, an amicus brief. Um, you know, I think there would be an opportunity to also, you know, to understand, you know, Colorado's political specific political history and, um, you know, seeking amicus briefs and leave of court is not the same as a plaintiff's right to discover those facts for themselves. And if I have time for one more, um, every, a lot of the argument today has been, do we fit in the city of Hugo or the Brampton box in terms of how we decide this issue, but we're sitting on bonk. So we're not really bound by either of those decisions. If you could wipe the slate clean, what would you ask us to adopt as the proper test here? So, uh, thank you for that opportunity. The, you know, sitting in bonk, I think that, you know, the court really could use this opportunity to clarify that this is not a matter of, uh, that this is not a jurisdictional issue, number one, and then two turning to the specific question of, of which test to apply with within the Brampton Hugo case law would be to, uh, to apply the test of both of Hugo, really looking back through to Brampton that, that there has to be a federal statute, which Hugo says the Colorado enabling act is a proper statute. And that looking at Brampton, that the right being structural and collective, which is the right requirement of a Republican form of government surely is. So that would be the test that would be applied and not to be a zone of interest piece. Would there be a piece that said, um, and doing those things, then you look at who falls into the group that can bring this claim. The zone of interest test, you know, it really, it is the roots of it go back to looking into whether or not a statute is designed to protect the class of people of which the plaintiff is included. And the zone of interest test is certainly, uh, not a demanding test and is meant to be for the benefit is meant to have the benefit of the doubt to go to the plaintiff. And so the zone of interest test could, could be applied here, but it also could be determined that the plaintiffs have met the zone of interest test because they have alleged an injury in fact, under an established that under article three. And then also though, that yes, it could be incorporated into the discussion of political subdivision. We argued in our group. Thank you. Judge Moritz. You're on mute. Thank you. I, my questions were really along the lines of, of where Judge McHugh was going. I, I noted, uh, at one point when you were asked about what, what would need to be developed, what facts would need to be developed. Your answer was that the record is bare as to briefing. And it seems to me that as Judge McHugh suggested, you really are just suggesting you'd like to have more briefing and you want that briefing to be directed towards merits, which you believe are intertwined with, with the standing issue. Yes, Your Honor. Yes, Your Honor. And, and, but to develop those merits, you know, really there would need to be, um, some facts finding around, you know, just talking, you know, seeking information and facts from a constitutional history experts and applying that, that history. On your brief, you're, I'm sorry, go ahead. No, but I was going to say in your brief, I, I sort of got a mixed message on that. There was one page in your brief, I think it was page six in your supplemental brief where you, you basically said, we've laid out all the facts necessary. Uh, we've laid all these facts out and the panel majority of, uh, opinions summarize these facts. So I sort of got a mixed message there where you seem to be conceding that the facts are all there, that this really isn't a factual question. It's a legal question, which is what the governor suggests. And, and perhaps Judge McHugh is right. Maybe it's supplemental briefings that you need, um, in order for us to answer the question, but, um, well, that aside, let me, can I ask you one more question? Uh, the chief mentioned justice, just disability and the whole political question and suggested that that might be a problem for you too. As I understand your supplemental brief in or your reply brief in response to the governor suggesting that we can look at justice, just disability as an alternative grounds for affirming. I, I take it you would object to that. Yes, we would object to looking at political, the political question doctrine at this phase, given that it's already been an issue that the court has decided is not proper for decision, you know, at this, at this stage. Um, and also I think procedurally, this is not an issue that the governor originally raised in his, uh, uh, motion to dismiss, uh, for lack of subject matter jurisdiction and the attempt to raise it now as a basis for dismissing the case for failure to state a claim. It's just, it's not, it's not proper and it's not in order. I think importantly to, you know, as I mentioned once before, the general assembly is waiting in the wings to become a plaintiff in this case. And that would surely under Arizona resolve the issue. They would be a proper party just as the political subdivisions are, but it certainly would also resolve any concerns about political question doctrine. All right. Thank you. Good morning. Um, I want to follow up on an aside that you made early in your argument, uh, about the language of the enabling act. I think you said something like it's not as open and shut as a boothing council would have it. And I wanted to give you an opportunity to, uh, tell us where in the enabling act, is there something to hang your hat on, uh, to show that you have some sort of protected interest here? Thank you, your honor. Um, well, section five of the enabling act is where the governor looks to claim that the, the requirement for Republican form of government is, is solely for the people. Um, there, the enabling act states that, um, the constitution, the constitution to be sent for popular vote quote in a case in case that it has been formed for the people of said Colorado. But if you look back to section four, which is a section where a Republican form of government is found in that set in that very section, it authorizes the language authorizes the constitutional convention to quote form a constitution and state government for said territory and quote with no reference that it be formed for the people. And I think importantly, the, that the, the language for the people is not found in both places is an indication that there are other beneficiaries of a Republican form of government than just the people, including the political subdivisions who form the structure of, of the, of the Republican government that is required. Thank you. I have no more questions. All right. Um, thank you. That, that is our first round and under our en banc format, um, judge Holmes will have an opportunity for three minutes if he chooses for some follow-up questions and then judge Briscoe will have three minutes for some follow-up questions. Judge Holmes. Thank you, Chief. Uh, let me just go back for a second to city of New York, uh, which was noted in, I think, a footnote of your brief and you alluded to it No, it's not your honor. The political subdivision was an analysis of political subdivision was not undertaken there, but importantly, um, the case was brought under the presentment clause and a political subdivision did bring that case. And let me stop you there. There was a specific statute. Was it not that provided for that action that was brought by the plaintiffs? Uh, that in fact, there was a provision, was there not? In the same way that enabling act is a statute that the plaintiffs are bringing the case under here. That that's exactly right. Well, this goes back to judge Bacarach's point and a point that I'm still struggling to understand, which is to the extent that you're accepting the premise that we can look to your complaint to find this connection that you have to a Republican form of government. Well, the district court exhaustively listed why the provisions that you cited in your briefing did not show that there was a, under the Hugo standard that you were a direct beneficiary of the enabling act. And there was no response. There was silence. And, and, and in your response to judge Bacarach, there, there's no indication that the enabling act specifically was directed at you in any sort of express terms. So what, what language can we glean that would make it that a Republican form of government, you know, that, that if we look at the enabling act, I think, you know, this language about, you know, who is the beneficiary, the enabling act is not, enabling act is silent as to who it benefits at all, who are the, the, the individuals who would benefit. And so, uh, you know, looking into what a Republican form of government means is really essential to determine making that determination. Um, and the, uh, we believe that the facts that we've ledged in our complaint are sufficient to refer both to the Republican form of government and to the enabling act to establish that standing for the political subdivision plaintiff that they're beneficiary to show that. And that's your complaint of vermin are sufficient to establish that. Correct. Okay. And, and I just want to highlight one point Judge Phillips raised earlier. Um, I, because I struggled to understand your, your, your reference hearkening back to the structural and collective rights language, uh, that, that was in Branson. Well, city of Chico went at some length to explain exactly what Branson meant by that, didn't it? And when it did that, it said that you have to have that. All that means is that the plaintiffs have to evoke a federal statute and that federal statute has to be directed at protecting or providing them with specific rights. That's it. Full stop. That's what it means. In that what city Hugo said. Last question. Thank you, your honor. If city of Hugo is read that directly, you know, that specifically, then, uh, certainly as we've discussed at length, that then we need to know what a Republican form of government means in order to know who is protected by it. Um, but you know, city of Hugo again, because that case was decided on a constitutional claim, not a statutory claim decided under the dormant commerce clause. It really does provide a window to look back into Branson and both city of Hugo and Branson indicate that the Colorado enabling act is a proper statute under which to bring a claim. Now, whether, you know, who benefits from the Republican form of government, the enabling act doesn't say. And so that's what we need to find out. All right, Judge Crisco. Has the district court had the opportunity to opine on what it means to have a Republican form of government and to whom that benefit endures? No, your honor. Are we a court of review or a court of first impression? This court is a court of review, your honor. Uh, asking again about city of Hugo interpreting Branson. Did it, did city of Hugo take Branson farther than the language of Branson? We believe that the city of Hugo looks back to Branson, that it doesn't, that, that, that it just returns to Branson, uh, to, to, for explanation of what, um, what is required when a federal statute is raised. And again, both the city of Hugo and Branson indicate that the Colorado enabling act is a proper statute under which a political subdivision can bring a claim. Thank you. All right. That ends our, um, presentation of the appellant's, uh, case. I am going to, um, call for a short break. It is currently 10 53 AM mountain and we'll reconvene at 11 AM mountain seven minutes. Welcome back. Um, let's turn to governor polis, Mr. Cutler check. You may proceed. You have three minutes for an opening statement. Thank you, chief judge Timkovich. It may have pleased the court, Michael could large chicken. We have governor polis for the last 10 years, several groups of plaintiffs have attempted in this lawsuit to see the governor of Colorado based on a constitutional provision that is never in 230 years of our nation's history, granted any plaintiff, any relief. The current set of plaintiffs consists of a group of political subdivisions who argued that they are now the right plaintiffs to overturn the taxing law passed by the people of Colorado. The court should find that they're wrong and affirm the district court for three reasons. First, the court should apply the substantive rule from city of Hugo. And I understand from plaintiff's argument, they don't disagree that the city of Hugo should still provide the rule of decision. In this case, that rule grows out of a century old body of case law from the Supreme court, which recognizes that political subdivisions are created by their states as administrative conveniences and that they do not organically possess any federal rights that they can assert against their states. This court and city of Hugo announced a clear rule that incorporates this case law, and it consists of two parts. Number one, political subdivisions cannot see they're creating states for violating any substantive provision of the constitution. And number two, that Congress can grant political subdivisions such rights, but only by enacting statutes that are directed at protecting or otherwise specifically provide rights to those subdivisions. This rule applies here and bars plaintiff's claims. Second, the court should apply the city of Hugo rule, regardless of whether it continues to treat political subdivision standing as a jurisdictional limitation. The governor agrees with the plaintiffs that in light of Lexmark, the political subdivision standing rule is more properly characterized as a non-jurisdictional bar on what claims a political subdivision can bring against its state. But jurisdictional or not, the court should apply the city of Hugo rule now and affirm. The plaintiffs argue that the court should not apply it now, either because the question is intertwined with the merits or because the governor's motion was brought pursuant to rule 12B1. But under either a 12B1 or a 12B6 standard, plaintiffs cannot show, as they must, that as a matter of law, when Congress passed the Enabling Act, it granted any rights to Colorado school boards, boards of county commissioners, or special district boards. Third and finally, the court can affirm the district court on the alternate grounds that the Supreme Court recently reaffirmed in Rucho v. Common Cause that the Guarantee Clause does not provide the basis for a justiciable claim, particularly when the plaintiff's allegations concern only a particular allocation of political power within a state. All of plaintiff's claims ultimately rest on this clause, so the court could also affirm on the alternate grounds that plaintiff's claims are not justiciable. And with that, I'm happy to take the court's questions. And counsel, for the opening statement, Judge Holmes, you may proceed first. Right now, I think I just have a few questions. What I want to focus on specifically is some language from your brief, which suggested that one ground to distinguish the zone of interest test was that the political subdivision standing test implicates constitutional claims and the zone interest test encompasses only federal statutory claims. Well, when you look through the rubric of City of Hugo, I don't see how that's the case. I mean, City of Hugo seemed to as well focus on statutory claims, and in fact, your articulation of the two-part test was said as much. So why is that a ground for distinguishing the zone of interest test from the political subdivision standing test? In our view, Your Honor, the political subdivision standing test is broader than the zone of interest test. As it was articulated in the Lexmark case, the zone of interest test is a question of statutory interpretation and interpreting whether Congress intended to encompass a particular class of plaintiffs when it enacted a particular statute. But as Your Honor's question suggested, and as I mentioned in my opening statement, the City of Hugo rule is broader than just applying the statutes. It also applies to the constitutional provisions in the manner City of Hugo sets forth. Well, the manner that City of Hugo sets forth is that you use the federal statute and you go through the Supremacy Clause to file your claim. What else does it say? In other words, the only difference is that City of Hugo implicates the notion that you, to use the structural collective rubric that is so common in this context, that City of Hugo said that the structural aspect lies in the Supremacy Clause and that what you're doing is pursuing a federal statute under which you have been given some right to pursue a claim. Now, it may look a little different, but how is that not statute-centric just as the zone of interest test? I agree with you, Your Honor, that that part of the City of Hugo test is statute-centric, but the other part of the City of Hugo test says that substantive rights granted by the Constitution are not enforceable by political subdivisions against their states. That's the other piece of the City of Hugo test that isn't necessarily encompassed in a strict zone of interest analysis. Well, that part of the test that says what's not on the table, right? I mean, the language from your brief leading to suggest, well, I need to understand that you were saying that it encompasses constitutional claims, but really that part of the test just says constitutional claims under substantive provisions are not on the table, right? Yes, I'd agree with that. That's another way to characterize it, Your Honor. If the court wanted to say the City of Hugo test kicks certain constitutional claims out before you even get to the substance of them, I think that's another appropriate way to analyze it. Okay. For the moment, Chief, I think that's all I have. Driscoll, you have five minutes if you want. Just to follow up on what you just said, the City of Hugo, you say, kicks out constitutional claims. We have a statutory claim here, right? Correct, Your Honor. So when the City of Hugo is telling us what we should look at for a statutory claim, an enabling clause, enabling act claim, was that dictative? I don't believe so, Your Honor. Well, I think what the City of Hugo court was doing was incorporating the Branson rule and explaining how the Branson rule applies to statutory claims enforced through the supremacy clause while still maintaining the bar on substantive constitutional claims. So basically, that discussion is background to get to the merits of addressing the constitutional claim? I think in the City of Hugo discussion of the test is a way of characterizing what the court was doing in Branson, yes. And if the City of Hugo was interpreting Branson, did Branson require a statute that specifically provided rights to a political subdivision? I think it did, Your Honor, or at least that it was directed at protecting the political subdivision. The language in Branson was, is the plaintiff a beneficiary of the federal law at issue? And the beneficiary language, you know, stems from the fact that the provision of the enabling active issue of Branson concerned a trust. Isn't that just unique to that case and those facts? I mean, you can't say that the That is not our position, Your Honor. What the City of Hugo rule does by articulating it as directed at protecting prong or test is to broaden it outside of just the trust beneficiary context to be able to analyze any act of Congress to determine whether it was in fact directed at protecting those political subdivisions. Well, if it doesn't be enabling act, isn't it directed at protecting these political subdivisions? The provisions that were at issue in Branson certainly were, but not the guarantee provision that the plaintiffs are suing under here, Your Honor. There's nothing in section four. Correct, Your Honor, but section four of the Enabling Act specifically, there's nothing about the land trust that was also set up in the, through the Enabling Act that is implicated by the guarantee of Republican form of government that's mentioned in section four of the Enabling Act. They're suing under a completely different provision of the Enabling Act than was at issue in the Branson case. And so you're reading Branson to require that beneficiary situation. Again, back to the trust issue. No, Your Honor, not that it needs to be a beneficiary or that it needs to be a trust, but that the part of the statute under which the plaintiffs are suing, that part of the statute needs to be directed at protecting the plaintiffs, not just any other part of the statute, but specifically the part of the statute under which they are claiming rights needs to be directed at protecting them. You can see it here that the plaintiffs have article three standing. We have not disputed that provision. Is there subject matter jurisdiction? I'm sorry, Your Honor. Is there subject matter jurisdiction? Subject to the justiciability concerns we have, yes. The district court dismissed for lack of jurisdiction. Was that a proper ruling? Your Honor, it certainly was under controlling circuit precedent at the time. Since the court is now sitting on bond, it has the power to overturn that circuit precedent and hold that political subdivision standing is not jurisdictional. And as I mentioned, we agree with the plaintiffs that a better characterization post-lexmark of the rule is that it's a non-jurisdictional rule. So the district court addressed that with a proper motion under 12B6? No, Your Honor, because we moved in the district court under rule 12B1, we made a facial challenge, and we stated this in our motion. It's at page 1458 of the record. We said we were making a facial challenge. And this court has recognized that a facial challenge under rule 12B1 applies effectively the same standard as a 12B6 motion, which is you assume the factual allegations distinct from the legal conclusions that are in a plaintiff's complaint. Assuming the truth of those, is there a legal cause of action? Has a legal cause of action been stated by the plaintiff under the provisions of law? Did the district court have that opportunity to look at this case under 12B6? Your Honor, by ruling upon our facial challenge under 12B1, the court applied the same standard that it would apply under 12B6 standard. Last question. If the plaintiff can't state a claim, can the General Assembly? Your Honor, certainly the General Assembly is more properly positioned to bring a claim like this than the plaintiffs are, and that obviously hasn't come up before the district court yet. Thank you. All right. If I could just take it from there. What do you think the correct rule of decision should be for the en banc court now that we're not necessarily bound by Branson or Hugo? What would the governor say the proper rule of decision should be for this case and future cases challenging the Benabling Act? Your Honor, our position is for whether it's the Enabling Act or any federal statute, the proper rule of decision is the City of Hugo rule of decision, which, as I articulated in my opening comments, has the two parts, both the constitutional components, which bars substantive constitutional claims, and the statutory component. And adopting the City of Hugo test of whether a statute is directed at protecting or specifically provides rights to the political subdivision plaintiff, we would submit as the proper test that the court has applied and should apply. Well, if that's the case and we're not looking at this amorphous zone of interest test from LexMart, you're looking at, I think, probably a little more granular examination of it, who would be a proper plaintiff to challenge the Enabling Act's incorporation of guarantee clause language? Well, there may not be one, Your Honor. The guarantee language in the Enabling Act isn't clearly granting rights that were intended to be enforced 140 years after statehood, after Colorado was actually admitted as a state. But to the extent anyone has rights under the Enabling Act, we agree with the district court's finding that the, excuse me, any rights under the guarantee provision of the Enabling Act, we agree with the district court's conclusion that those rights were intended for the people who were the beneficiaries of the state constitution created by the Enabling Act. You don't think it would be the collective legislature, the General Assembly, would be the most injured party here? Your Honor, under the Arizona State Legislature case, the legislature, the General Assembly, likely is the only party that could conceivably have standing here if there is a justiciable claim here at the end of the day. I get your question. What if, say, Colorado by initiative completely abolished the General Assembly? Not a unicameral, not a bicameral legislature, but no legislature and kind of an executive rule. Is that, do we still have a Republican form of government if the state did that? Your Honor, maybe not, but two points I would make to that. Number one, the Supreme Court has held that, at least in every case that's come before it so far, that that's a question for Congress and not a question for the courts because the line drawing the courts would have to make in that circumstance just aren't tethered to any judicially manageable standards. Even in that extreme hypothetical, there would not be a plaintiff, either a political subdivision or a citizen or a legislative entity that could bring a challenge? There may be, Your Honor. The courts have not been presented with that extreme example, and we would certainly take the position that Tabor doesn't present that extreme example. Under the Pacific States case that Your Honor alluded to earlier, experiments with direct democracy, we know from Rucho that even political gerrymandering, that those do not state causes, those are well within the guardrails that have been established for what is not a justiciable guarantee clause claim. Interesting if we end up with Jack Kirk. Sorry, I was so shocked that Judge Hart said that. Is a 12 v. 6 dismissal, by definition, with prejudice? Not by definition, Your Honor. I believe the court has some discretion as to whether it's going to deal with prejudice dismissal or not. Okay, what about in this case? Would the nature of your argument for dismissal be with prejudice? As to these plaintiffs, yes, Your Honor. And, Judge, as you answered in connection with Judge Briscoe, the dismissal here was a dismissal for lack of subject matter jurisdiction, correct? Correct, Your Honor. And under all of our precedents, in the Supreme Court precedents, a dismissal for lack of subject matter jurisdiction, in that case, by definition, is always without prejudice, correct? I believe that's correct, Your Honor. And so your argument for affirmance on alternative ground would enlarge the scope of the judgment because now it is to this point been without prejudice because it's been based on subject matter jurisdiction. And you're asking us to affirm that under 12 v. 6. And as I understand what you just said, the nature of your argument would call for the dismissal to be with prejudice, and typically that would require a cross appeal to enlarge the scope of the judgment. Is that a problem for you in arguing for alternative basis to affirm? You pointed to Morrison, for example, but the issue wasn't framed in Morrison. How do you get around the scope of the judgment? Well, Your Honor, with respect to our alternative grounds for dismissal or for affirmance, excuse me, we would initially say that if the court affirms on the grounds of the city of Hugo, then there's no need to reach it. But if the court isn't going to affirm on the grounds of the city of Rucho, courts always have an obligation to assure their own jurisdiction and assure that there is, in fact, a justiciable claim. So that would be the if the court's not going to affirm on the grounds of the city of Hugo case, that it could still affirm and should affirm here. Based on justiciability under Rucho, which was not in your PFR, but put aside Rucho and the political question doctrine. Under your argument in your supplemental brief, apart from Rucho, wouldn't we be unable to affirm on those grounds under 12 v. 6, not Rucho or political question? Wouldn't we be unable to affirm on alternative ground? Because by doing that, we would be enlarging the scope of the judgment. I don't believe so, Your Honor. Under the facial challenge that we brought under Rule 12 v. 1 or under 12 v. 6 standards, the same legal determination is presented to the district court, which is do these plaintiffs have these plaintiffs stated a claim? And nothing in the factual allegations that were in question by the plaintiffs. It turns solely on the legal question of did the plaintiffs have an enforceable right under the Enabling Act or the Guarantee Clause, and the district court properly found that they didn't. So I don't believe the court would be enlarging the scope of the judgment at all to affirm here on the grounds that whether under 12 v. 1 or under 12 v. 6, the plaintiffs do not have a claim that they can enforce under the Guarantee Clause of either the statute or the Constitution. I have time for one last question. Would then our ability to affirm on alternative ground to avoid enlarging the scope of the judgment require us to affirm under 12 v. 6, but only to the extent that the dismissal remains without prejudice? Your Honor, I think the court could appropriately fashion that relief. I think as a practical matter, since there have been normally a dismissal without prejudice under 12 v. 6 is because there's some additional factual allegations that the plaintiffs didn't include in an initial complaint that they then can go back and add. Here there are no such additional factual allegations. It's really a legal determination as to whether the Enabling Act or Guarantee Clause creates any enforceable rights here. So if the court were to fashion that relief and say that it's affirming a dismissal without prejudice, I don't know that we would really end up in a materially different place, Your Honor, because I think as to these plaintiffs, they still would not be able to state a different claim. Thank you, Judge Phillips. Thank you, Chief. As you know, the panel decision reversed on intertwining grounds, and you take that on in various places, including I'm looking at page two and three of your supplemental reply brief, where you say there's distinct questions. Number one, the merits question whether the TABOR violates the guarantee of Republican form of government, and number two, whether the Guarantee Clause confers any rights on the political subdivisions to suit apparent states. I'm not sure I follow that argument, and here's what I'm not understanding. Wouldn't the first question, whether or not the Guarantee Clause confers rights on the political subdivision, be a way that the second question would be met, which is to say, if it did confer rights on the political subdivisions to suit, that would be a violation of the Guarantee Clause, and therefore intertwined. Tell me why they're not intertwined. Well, Your Honor, they're not intertwined because you could assume, for purposes of this, even assuming that TABOR, which is not unlike the other experiments of direct democracy that have been found to be non-justiciable, you could assume that TABOR does not, or that does violate the Republican form of government, and you still would not have answered the question of whether the political subdivisions of the state of Colorado have the rights under the Guarantee Clause or under the Enabling Act to sue the state to enforce that supposed violation. So they're distinct questions, and it's not uncommon for courts to have to decide separately from, is there a statutory or constitutional violation of, is this the right plaintiff who can bring this type of claim? Just one example, in the Burwell versus Hobby Lobby case, the Supreme Court first had to decide, was Hobby Lobby the type of plaintiff that was covered by the Religious Freedom Restoration Act? And only after determining that it was could it go on to determine whether the contraceptive mandate that was at issue in that case was a violation of that act. So just like there, the questions are distinct here of who is being protected, and then what, as a substantive matter, does that Republican guarantee guarantee? And one short question, if I may, Chief, and that is, if the General Assembly is indeed raring to go, and you concede that it's a more suitable party, not necessarily say that you If we affirm, does the General Assembly get its day in court? Is this all just an exercise and delay by affirming and making there be a new suit? I'm not sure, Your Honor, that it would be any further delay to have the General Assembly file a new lawsuit than to have them intervene in a lawsuit that's been pending for 10 years. But the possibility of the General Assembly's involvement also wouldn't resolve the question that's before the court now, which is about these plaintiffs, these specific political subdivision plaintiffs, and whether they have rights that they can enforce. Just as the General Assembly didn't intervene for 10 years, there's no guarantee that the General Assembly would remain in this lawsuit for the duration. And if these plaintiffs, if the court doesn't resolve the ability of these plaintiffs to bring these claims, the same question could be before the court at a later date. Thank you. Thank you, Judge McHugh. You're on mute. There you go. Judge Phillips just asked the question I had, but I have a follow-up to it, which is if we were to remand to the district court to look at this in the first instance under 12b-6, and the district court chose to first let the General Assembly intervene and made a determination that the General Assembly satisfied all the standing credential or otherwise requirements, wouldn't this issue become moot because you've got somebody with standing and you can move forward with the merits? I don't think I would agree that it becomes moot, Judge McHugh, but I would agree that the case at that point would be able to, if the General Assembly was permitted to intervene for all the other reasons, that it could proceed with the General Assembly as the plaintiff. But as I mentioned in my response to Judge Phillips, the background question of whether these plaintiffs have the ability to bring these claims would still be lingering, and there's always the possibility that the court would be confronted with, either the district court and or this court, would be confronted with it again down the line. And that's why we believe it's important that the court resolve that legal determination now. Well, we may or may not be faced with it, right? I mean, if the General Assembly stays in and it all proceeds, you might never have to circle back to this issue. It's true, Your Honor, but it's also true that the General Assembly may or may not intervene or be permitted to intervene. Certainly something the General Assembly will have to explain to the district court is the timeliness of their intervention, which is not an issue that's been briefed yet. So if the court were to deny their intervention, then we would, in fact, remain in exactly the position that we're in, in exactly the posture that we're in right now. Thank you. Judge Moritz? You're on mute. There we go. I want to take you back to where you were talking about the beneficiary language that we used in Branson. And if we, as an en banc court, decided that that Hugo essentially misstated or overstated that language and that we don't agree that Hugo, Hugo's language about the statute needing to be directed at protecting this particular party, if we disagree with that, where does that leave us? Does it leave us back with Branson? And if we agree that Branson's beneficiary language was the appropriate language, the less stringent language, what's your position then? Well, Your Honor, I think it's our position that City of Hugo didn't change the Branson rule, that it stated it in a way that applies the Branson rule to non-trust conduct. I understand, but let's say that we, as an en banc court, disagree with you about Hugo and its application or statement of what Branson held. And that we think that the standard is less stringent and is somewhere more along the lines of the beneficiary test that Branson sued to. So, Your Honor, my read of Branson is that the beneficiary language is actually more stringent than what City of Hugo was doing because it does implicate this whole rubric of trust law that isn't often or isn't always, and certainly not often, the frame under which a federal statutory right is granted is through trust law. So, I think what City of Hugo was trying to do is to take that essential kernel of Branson and apply it outside of the trust context. If the court were to abandon the City of Hugo rule altogether, I think the court would be confronted with the difficult question of then putting into different language, different from what City of Hugo used, as to what a beneficiary of a law is outside of the trust context. All right. Thank you. Thank you, Your Honor. Judge Iron? I just want to follow up with opposing counsel's suggestions that we need additional briefing, or at least amicus briefing, in order to assess what the Federalist Papers mean in this context. Your Honor, we will, of course, be happy to provide any supplemental briefing the court believes would be helpful. I don't believe that any is necessary here. I think there's been ample briefing in this case. There was a full round of briefing before the district court, before the panel, and now in the supplemental questions that this court has ordered, that plaintiffs have had ample opportunity to demonstrate why they believe that the Guarantee Clause, and as it stated in the Enabling Act, why that grants them enforceable rights as against their state. We don't believe any additional briefing on that point is necessary. Thank you. I have no further questions. All right. We're back to Judge Holmes. You have three minutes if you need it. I don't need it, but just a brief clarification based on Judge Ives' point. What I understood her to be asking is whether there would be need for additional briefing on the question of the scope of the Guarantee Clause. Now, that hasn't been briefed, right? I mean, that's, we've briefed a lot about whether these are the claimants that can invoke the Guarantee Clause, but the question of what the scope of the Guarantee Clause is, my recollection is that has not been briefed. I'd agree with that, Your Honor. The meaning of the Guarantee Clause has not been briefed, but, sorry, but to whom the Guarantee Providing Enabling Clause applies has been. You've briefed that, I'd not get that. It feels that way, Your Honor. Okay. I have nothing further. Thank you, Judge Briscoe. Yeah, just one question. You said in your very opening line that, I thought you said, that the Enabling Clause had never been granted, never been given any relief in any case, not served as a basis for relief. Didn't it serve as a basis for relief in Branson? Your Honor, my, yes, it did. I believe my opening line may have been too opaque. It was meant to refer to the Guarantee Clause of the Constitution, and the Guarantee Clause of the Constitution, as re-articulated in the Enabling Act, is effectively the same right from our view. We also here have the Enabling Act to look at and to focus on. I agree with that, Your Honor. We have to determine if there is a claim, cause of action, proper standing and jurisdiction under the Enabling Act. Certainly, Your Honor. Yes. Okay. Thank you. All right. Ms. Mercer, I hope I'm not ambushing you, but under our format, it's inevitable that you will not get any rebuttal time the way it's structured. Realizing that, I think it's proper that you get two minutes in rebuttal, and you may take all or as much of that as you want. Thank you, Your Honor. This opportunity to have this argument before the panel really has helped to hone in on the exact issues that are here. The political subdivision plaintiffs in this case, really where we're at is the question of whether or not they have standing here, and whether or not they can properly bring this claim. I think we've gone down the line of that there are three ways that this court can deal with this case and all of them return us to the district court. You know, there can be a determination with this court sitting in bonk that the Article III standing has been met and that the zone of interest prudential standing question has been met. And so, the question of political subdivision to the extent that it remains should be decided at a later point in the proceeding. Second, applying Branson and Hugo, that the political subdivision standing has been met by the plaintiffs of this case. Both Branson and Hugo narrowly applied the question of political subdivision standing to the specific facts of this case. And again, this court sitting in bonk has the opportunity to do the very same here with this case and with these political subdivision plaintiffs and the uniqueness of which the facts that they have brought. And then third, the court certainly can make a determination that political subdivision standing is intertwined with the merits, whether that's because of the zone of interest or whether it's because of an application of the rule of the city of Hugo, a selective and narrow application of the city of Hugo rule. In any event, though, this case should be returned to the district court for further proceedings on the merits where the General Assembly is waiting to join the case and would have the opportunity to be a party of this case and possibly resolve all of the issues that we have. So thank you for the opportunity. All right, counsel, we appreciate the fine arguments this morning. It's not a traditional format, but those were extremely helpful and well presented, and we appreciate that. The case will be submitted. You're excused.